

**FILED**

MAR 07 2024

Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

IN THE MATTER OF THE SEARCH OF )
HISTORICAL CELL-SITE AND REAL- ) Case No. 3:23-MJ-2091
TIME GEO-LOCATION INFORMATION )
FOR TELEPHONE NUMBER 915-207-0262 ) Filed Under Seal

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Alexander Alfonso, a Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI"), and being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for authorization for real-time geo-location data about the location of, as well as historical location and account data regarding the cellular telephone bearing the number 915-207-0262 ("TARGET PHONE") which is believed to be used by Wilmur Velazquez Najera ("WILMUR"). The subscriber for TARGET PHONE is currently unknown. TARGET PHONE is serviced by Verizon wireless.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3123(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

1

3. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

4. I am a TFO with the FBI and have been since 2022. I am assigned to the FBI Knoxville Field Office's Transnational Organized Crime West (TOC-W) Task Force. I am also a Detective for the Sevier County Sheriff's Office and have been for approximately seven years. During that time, I participated in the investigations of persons suspected of various violations of state law. Those investigations utilized seizure warrants, search warrants, and arrest warrants. I have received training in and conducted investigations into controlled-substance distribution. I have experience in drug-trafficking investigations including visual surveillance, witness interviews, search warrant executions, the use of cooperating witnesses, interviewing confidential human sources (CHS), seizure of drug evidence, and controlled purchases of drug evidence. Through training and experience I'm familiar with the habits, practices, methods, and general behavior of criminal groups engaged in organized criminal activity.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a District Court of the United States that has jurisdiction over the offenses being investigated.

## PROBABLE CAUSE

7.  Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846, specifically conspiracy to distribute cocaine, have been committed, are being committed, and/or will be committed by the user of the TARGET PHONE, and others, known and unknown, as explained below. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and/or will lead to the identification of individuals who are engaged in the commission of these offenses. In summary, law enforcement knows for a fact that WILMUR uses TARGET PHONE to conduct illegal activities including distributing cocaine in the Eastern District of Tennessee.

8.  Law enforcement has been investigating the illegal activities associated with WILMUR and his drug trafficking organization ("DTO") for the past two months. Law enforcement has used different types of investigative techniques, including but not limited to, pen register / trap and trace devices and physical surveillance.

9.  This investigation outlined herein involves a Confidential Human Source (referred to hereinafter as "CHS"). CHS is not an anonymous source and has interacted directly with investigators involved in this investigation. CHS has been cooperating with law enforcement for over one year and is currently motivated by receiving financial compensation. CHS has worked with law enforcement in the past for consideration on state charges. CHS has been interviewed by law enforcement. A portion of the interviews were in-person, the interviewing agents are fully aware of CHS's identity, and CHS did not attempt to obscure his/her identity in any manner. The requirement that CHS provide only truthful information was stressed to CHS at the beginning of his/her cooperation. To date, no information received from CHS is believed to be dishonest or

3

unreliable. For these reasons, and as demonstrated herein, your Affiant believes information received from CHS to be reliable, true, and accurate to the best of my knowledge. CHS is familiar with WILMUR and his affiliation with narcotics trafficking. CHS has provided information concerning WILMUR. CHS has direct access to WILMUR via the TARGET PHONE and to WILMUR's network of "runners" (Drug runners are often utilized in a drug conspiracy in an attempt to take some liability off of the upper hierarchy of drug distributors). Information provided by CHS that could be corroborated has been.

10. CHS provided TARGET PHONE to law enforcement and described WILMUR as a drug dealer who lived in Sevierville, TN. CHS was shown a photo of WILMUR and confirmed the individual in the photo was WILMUR and the user of the TARGET PHONE.

11. CHS has sent text messages and made calls to TARGET PHONE to set up drug buys on law enforcement's behalf. For example, on April 19, 2023, CHS contacted WILMUR via TARGET PHONE to arrange a controlled purchase of approximately one gram of cocaine. At approximately 3:43 PM, CHS met with detectives from the Sevier County Sheriff's Office (SCSO) Narcotics, Organized Violent-Crime, and Apprehension Unit (NOVA). CHS had been in contact with WILMUR on TARGET PHONE prior to meeting with law enforcement and had arranged to meet with WILMUR to buy one gram of cocaine. The deal was organized to take place at 2550 Veterans Blvd. in Pigeon Forge, TN. CHS and CHS's vehicle were searched and found to be free of contraband. CHS was provided with marked confidential funds and with audio/video recording devices went to 2550 Veterans Blvd. Shortly after arrival to the meet location, CHS called WILMUR on TARGET PHONE and WILMUR changed the meet location to 504 Wears Valley Rd., Pigeon Forge, TN. CHS arrived at the final meet location and one of WILMUR's "runners" arrived. CHS and the unidentified Hispanic male met and exchanged the confidential funds for

4

the cocaine. CHS reported back to a pre-determined meet spot to meet with law enforcement. Once at the meet spot, the drugs and recording equipment were recovered by law enforcement and the transaction was concluded. This deal occurred in the Eastern District of Tennessee.

12. On another occasion, April 25, 2023, CHS met with law enforcement and placed a recorded controlled call to WILMUR on the TARGET PHONE. A deal was organized for CHS to buy $300 dollars' worth of cocaine from WILMUR. The deal was organized to take place at 2550 Veteran's Blvd., Pigeon Forge, TN. CHS and CHS's vehicle was searched and found free of contraband and CHS was given $300 in confidential funds and audio/video recording devices to complete the transaction. CHS arrived at the designated location and after a short time, WILMUR arrived at the location and called CHS on the TARGET PHONE to tell CHS where he was parked. CHS went to WILMUR's vehicle and got in the back seat where the confidential funds were exchanged for cocaine. CHS exited WILMUR's vehicle after brief conversation and left the area to meet with law enforcement. Once at the meeting area with law enforcement, the drugs and recorders were recovered and the transaction was complete. This deal occurred in the Eastern District of Tennessee.

13. WILMUR is a drug distributor who operates within the Eastern District of Tennessee. WILMUR both distributes drugs himself and utilizes runners to distribute drugs on his behalf. WILMUR uses the TARGET PHONE to setup drug deals with his customers and also to coordinate the delivery of drugs on his behalf by his runners.

## TECHNICAL INFORMATION

14. In my training and experience, I have learned that many wireless cellular telephone service providers provide cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate

information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

15. In my training and experience, I have learned wireless cell phone service providers provide cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other

types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

16. Based on my training and experience, I know that wireless providers can collect cell-site data. I also know that wireless providers such as wireless providers typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes Based on my training and experience, I know that wireless providers typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the user or users of the TARGET PHONE and may assist in the identification of co-conspirators and/or victims.

## **MANNER OF EXECUTION**

17. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

7

18. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the TARGET PHONE or receiving signals from nearby cellular devices, including the TARGET PHONE. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the TARGET PHONE and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the TARGET PHONE and use that information to determine the TARGET PHONE's location, even if it is located inside a house, apartment, or other building.

19. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. However, the use of such investigative device will not affect the TARGET PHONE or any non-target devices' ability to contact the emergency 911 system. In order to connect with the TARGET PHONE, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the TARGET PHONE, and law enforcement will limit collection of information from devices other than the TARGET PHONE. To the extent that any information from a cellular device other than the TARGET PHONE is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the TARGET PHONE from all other cellular devices.

## AUTHORIZATION REQUEST

20. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rules of Criminal Procedure 41 and 18 U.S.C. § 2703(c). The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123. The monitoring of the aforementioned device will not exceed thirty days.

21. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the person carrying the TARGET PHONE would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates; and flee from prosecution. This warrant does not authorize the collection of the contents of any wire or electronic communications.

22. I further request that the Court direct Verizon Wireless to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon Wireless. I also request that the Court direct Verizon Wireless to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon Wireless's services, including by initiating a signal to determine the location of the TARGET PHONE on Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government

9

shall reasonably compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance

23. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to identify the TARGET PHONE outside of daytime hours.

24. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be **sealed** until further order of the Court. These documents discuss an ongoing criminal investigation. Disclosure of this warrant could cause WILMUR to destroy evidence and hamper law enforcement's efforts to apprehend him. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

25. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET PHONE outside of daytime hours.

Respectfully submitted,

_____
ALEXANDER ALFONSO
TASK FORCE OFFICER (TFO), FBI

Subscribed and sworn to before me on May 3, 2023.

_____
JILL E. MCCOOK
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## Particular Items to be Searched

The cellular telephone assigned call number 915-207-0262 ("TARGET PHONE"), whose service provider is Verizon Wireless, and is being used by Wilmur Velazquez Najera ("WILMUR"). It is ordered that any Wireless Provider that is associated with 915-207-0262 furnish the information outlined in Attachment B.

Information about the location of the TARGET PHONE that is within the possession, custody, or control of Verizon Wireless, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Items to be Seized

All information, including historic, current, and future data, about the TARGET PHONE and location described in Attachment A for a period a of thirty days prior to and through thirty days after the issuance of this search warrant, both day and night. Information about the TARGET PHONE includes all subscriber information, MIN/ESN/IMSI/MSID and billing information, call logs for both received and transmitted phone numbers, time at which calls were placed, duration of the calls, SMS/MMS data including numbers to which messages were sent to, cell site activations, precision tracking through the use of GPS (not to exceed thirty days, beginning on the date of Judicial signature), per call measurement data (PCMD), RTT, NELOS and other location data calculated by the provider. "Information about the location of the TARGET PHONE" also includes all available E-911 Phase II data, GPS data, latitude-longitude data, Per Call Measurement data (PCMD) and other precise location information, as well as all current and historical call detail records and cell site information, to include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless, Verizon Wireless is required to disclose the Location Information to the government. In addition, Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless services, including by initiating a signal to determine the location of the TARGET PHONE on Verizon Wireless's network or with such other reference

points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance. As so defined, this search warrant, as herein ordered by the Court, orders the authorization and implementation of a pen register and trap and trace device, for the noted time period, pursuant to Rule 41 of the Federal Rules of Criminal Procedure and Title 18, United States Code, §§ 2510, 2703, 3122, and 3123. Said pen register and trap and trace implementation shall be implemented contemporaneously with any other provisions of this warrant and shall not only apply to the current denoted number, but to any number associated with the same ESN or IMEI of the target device.

Pursuant to an investigation of WILMUR for a violation of Title 21, United States Code, Section 846, 841(a)(1), this Warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachment A by collecting and examining radio signals emitted by the TARGET PHONE for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and radio signals emitted by the TARGET PHONE in response to radio signals sent to the cellular device by the officers for a period of thirty days, during all times of day and night. This warrant does not authorize the seizure of any tangible property or the collection of the contents of any wire or electronic communications. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).